(57 South. 322.)

No. 18,619.

GULF REFINING CO. OF LOUISIANA v. JEEMS BAYOU HUNTING & FISHING CLUB.

(Jan. 15, 1912.)

*(Syllabus by the Court.)*

1. ADVERSE POSSESSION (§ 101*)—OPERATION AND EFFECT—CONSTRUCTIVE POSSESSION.

Where one acquires, though at the same time and from the same person, distinct and widely separated tracts of land. and takes actual possession of one or more of them, the rule that possession, under title, of part of an estate is possession of the whole has no application to the tracts not actually taken possession of. That rule applies, and is confined in its application, to property so situated as to be within a common boundary, or, at all events, to property known and recognized as constituting a single estate.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 575–589; Dec. Dig. § 101.*]

2. TENANCY IN COMMON (§ 20*) — MUTUAL RIGHTS OF CO-OWNERS — ACQUISITION OF ADVERSE TITLE.

Where property, held in common by a number of heirs, is sold for taxes, and, within the delay allowed for redemption, one of the heirs redeems it, or takes title from the tax purchaser, in the form of a sale, he acquires no greater interest than he had before, save that he has a claim against his co-owners for reimbursement of his outlay.

[Ed. Note.—For other cases, see Tenancy in Common, Cent. Dig. §§ 61, 62; Dec. Dig. § 20.*]

3. TENANCY IN COMMON (§ 35*)—CO-OWNERS —RIGHTS AND LIABILITIES AS TO THIRD PERSONS.

Where a co-owner has taken title to the property held in common, at tax sale, or under any circumstances as a consequence of which the transaction inures to the benefit of his co-owners, as well as himself, and years afterwards appears before a notary solely as an heir, and, acting as such, declares that he relinquishes his rights in the property, and ratifies a conveyance, made by one of his coheirs, of the whole property, such relinquishment and ratification do not, quoad his other coheirs, operate to convey the tax title so taken by him, but is confined in its application to his interest as an heir.

[Ed. Note.—For other cases, see Tenancy in Common, Dec. Dig. § 35.*]

Appeal from First Judicial District Court, Parish of Caddo; A. J. Murff, Judge.

Action by the Gulf Refining Company of Louisiana against the Jeems Bayou Hunting & Fishing Club. From a judgment for plaintiff, defendant appeals. Affirmed.

Blanchard & Barret & Smith and Alexander & Wilkinson, for appellant. D. Edward Greer and Thigpen & Herold (F. C. Proctor, of counsel), for appellee.

Statement of the Case.

MONROE, J. Plaintiff alleges that it is the owner of an undivided one-fourth interest in the N. W. ¼ of section 20, township 20 north, range 15 west, in Caddo parish, and, after setting forth its title, further alleges that defendant "claims to be the owner of said property," and that neither it nor defendant is in possession; and it prays that defendant be cited, and that it have judgment decreeing it to be the owner of the interest described, and decreeing a partition of the property in kind, and putting it in possession of the part that may be allotted to it. Defendant filed an exception, alleging actual possession for more than a year, and praying that plaintiff be relegated to "a regular petitory action," which exception, having been referred to the merits, it answered, setting up title to the entire tract, pleading the prescription of 3 and 10

years, and praying that plaintiff's demand be rejected.

Omitting, for the present, certain alienations, to which we will refer hereafter, it appears that the quarter section of land here in question was owned by Stephen D. Pitts and his wife, Ann, as community property, and that they died (the last of the two about 1883), and were succeeded in title by their sons, T. H. Pitts, R. D. Pitts, and R. L. Pitts; that T. H. Pitts died in 1877, and was eventually succeeded in title by his daughters, Sallie (who became Mrs. Austin) and Lucy (who became Mrs. Jocelyn); that R. L. Pitts died in 1905, and was succeeded in title by his sons S. D. Pitts, A. C. Pitts, A. L. Pitts, and T. H. Pitts; that R. D. Pitts died in 1905, and was succeeded in title by his daughter Annie (Mrs. Graham) and his son, L. J. Pitts; so that, if there had been no alienation, the land would now be owned by Mrs. Austin and Mrs. Jocelyn, each for one-sixth, aggregating four-twelfths, S. D., A. C., A. L. and T. H. Pitts, each for one-twelfth, aggregating four-twelfths, and Mrs. Graham and L. J. Pitts, each for one-sixth, aggregating four-twelfths.

Referring now to the alienations, we find that on November 1, 1886, the land in question was registered as forfeited to the state for the taxes of 1885, assessed to the succession of Mrs. Ann Pitts. On June 3, 1889, it was sold to Benjamin & Barron for the taxes of 1888, similarly assessed; and, within the 12 months allowed for redemption, to wit, on May 21, 1890, Benjamin & Barron conveyed "such title as they received" to R. D. Pitts; but, so far as we are informed by the record, the deed executed by the parties was never recorded. On September 29, 1895, Mrs. Austin paid into the state treasury the sum of $4.60, as the amount, including interest, penalties, and costs, due for the taxes of 1885, and obtained from the State Auditor a certificate of redemption, as against

the forfeiture for said taxes, which had been registered on November 1, 1886. On May 8, 1899, Mrs. Austin executed an instrument, purporting to be a sale of said quarter section, together with a quarter section in another range and township, to S. N. Kerley and the Jeems Bayou Fishing & Hunting Club; and nearly 16 years later, to wit, on March 3, 1905, R. D. Pitts executed an instrument reading, in part, as follows:

"Before me * * * personally appeared R. D. Pitts, * * * who declared * * * that he is one of the three heirs of Stephen D. and Mrs. Ann Pitts, and, as such, that he did, by these presents, waive, relinquish and renounce in favor of S. N. Kerley and the Jeems Bayou Fishing & Hunting Club * * * all his right, title and interest in and to the following described property: [describing the property that had been conveyed to Kerley by Mrs. Austin]."

The consideration of this transfer and waiver is this, to wit:

"That said Pitts has a like waiver of interest in other lands from the heirs of Stephen D. and Ann Pitts, deceased, and he desires here to ratify and confirm the sale of this particular property, by his niece, Mrs. Sallie Austin, to S. N. Kerley, * * * and by said Kerley sold, or agreed to be sold, to the said Fishing & Hunting Club; his niece and the other heirs of Stephen D. and Mrs. Ann Pitts having ratified and confirmed the transfer made by him of another piece of property belonging to the succession of said Stephen D. and Mrs. Ann Pitts, his mother.

"The said Pitts further states that, while there has been no written partition between the heirs of Stephen D. and Mrs. Ann Pitts, there was an understanding and agreement between them as to a division of the property, and that the property herein described has been set aside to Mrs. Sallie Austin, who sold it to S. N. Kerley, and, by said S. N. Kerley was transferred, or agreed to be transferred, to the Jeems Bayou Fishing & Hunting Club, and that it was his purpose and intention to here ratify and confirm this sale to said Kerley, above referred to, and to waive and renounce in favor of said Kerley and the said Fishing & Hunting Club all right, title and interest in said property."

On April 12, 1907, the defendant herein obtained an order, in the United States District Court for the Western district of this state, in the matter of the bankruptcy of S. D. Pitts, who, as one of the four sons of

R. L. Pitts, had inherited an undivided one-twelfth interest in the property, enjoining the trustee from selling, as belonging to the estate of the bankrupt, the undivided one-twelfth interest in S. W. fractional ¼ of section 10, Tp. 20, R. 16, and the undivided one-eighth interest in the E. ½ of the N. W. ¼, and the undivided one-twelfth interest in the W. ½ of the N. W. ¼, of section 20, Tp. 20 N., R. 15 W., which order appears to have been obtained upon a finding by the court that defendant was the owner of the whole of said sections 10 and 20, and apparently upon the fact that the property which the trustee was thus prohibited from selling was scheduled as belonging to the estate of the bankrupt. Why the interest of the bankrupt in the land in section 20 should have been described as it was is not explained, since the interest that he inherited from his father was one-twelfth of the quarter section, and not one-eighth of the E. ½ and one-twelfth of the W. ½, which together make five forty-eighths, or one forty-eighth more than the bankrupt had inherited.

Assuming that defendant has acquired the interests in said property which were inherited by Mrs. Austin, R. D. Pitts, and Mrs. Jocelyn, it has obtained title, in that way, to three-fourths of the whole; thus: Mrs. Austin, two-twelfths, R. D. Pitts, four-twelfths, Mrs. Jocelyn, two-twelfths, S. D. Pitts, one-twelfth, total nine-twelfths or three-fourths. The remaining one-fourth interest was inherited by A. C., A. L., and T. H. Pitts (sons of T. H. Pitts, and brothers of S. D. Pitts, bankrupt), and was sold by them to plaintiff, by two acts of date October 30, 1908, and duly recorded. There was judgment in the district court in favor of plaintiff, and defendant prosecutes the appeal.

### Opinion.

[1] The prescription of 10 years pleaded by defendant is abandoned, and that of 3

129 LA.—33

years would be of value only in the event of its being found that defendant acquired rights under the tax title conveyed by Benjamin & Barron to S. D. Pitts. The claim of possession, set up in order to compel plaintiff to resort to a petitory action, proper, is but vaguely pressed, and is without merit. It rests upon the proposition that defendant, having purchased a quarter of section .10 in one township and range, and a quarter of section 20 in another township and range (the two tracts being widely separated), at the same time and from the same person, and having gone into possession of the tract in section 10 under the title so acquired to both quarter sections, such possession, as to the quarter of section 20, falls under the rule that possession, under title, of part of an estate is possession of the whole. The rule is well established; but it has never been applied in this state or elsewhere, so far as we are advised, to cases such as this, where a purchaser acquired distinct tracts, which are separated from each other, and only takes actual possession of one or more of them. Article 3437 of the Civil Code, to which we are referred, contemplates, we think, an estate included within the same boundary, or at all events, known and recognized as a single estate; and the case of Bernstine v. Leeper, 118 La. 1098,[1] which is also cited, was a case involving contiguous subdivisions of the same section. The question does not appear to have been heretofore presented to this court; but we are informed, through the brief of plaintiff's counsel, that it has been decided by the courts of some of our sister states upon the basis upon which the views above expressed are predicated; the cases to which we are referred being Stephenson v. Doe, 8 Blackf. (Ind.) 508, 46 Am. Dec. 489; Moses v. Gatliff (Ky.) 12 S. W. 139; Ga. Pine Inv. Co.

---

[1] 43 South. 889.

v. Holton, 94 Ga. 551, 20 S. E. 434; Brown v. Bocquin, 57 Ark. 97, 20 S. W. 813.

[2] Defendant's main contention is that, by the act of ratification and relinquishment, executed by R. D. Pitts on March 3, 1905, it acquired, not only the one-third interest that he had inherited as the heir of his parents, but all the title that he possessed, and that as to it (a third person) he was the owner of the entire property by virtue of the recorded conveyance to him from Benjamin & Barron, the adjudicatees at the tax sale. In equity and good conscience, and under the settled jurisprudence of this state, R. D. Pitts was not the owner of, and had no claim to, any other interest in the property, save that which he had inherited, since his acquisition of the title from the purchasers at the tax sale inured to the benefit of his co-owners, as well as to his benefit; and he thereby acquired no greater interest than he had before. Hake v. Lee & Beall, 106 La. 482, 31 South. 54; Bossier v. Herwig, 112 La. 545, 36 South. 557; Alexander et al. v. Light et al., 112 La. 927, 36 South. 806; Duson et al. v. Roos et al., 123 La. 835, 49 South. 590, 131 Am. St. Rep. 375; Robinson v. Lewis, 68 Miss. 69, 8 South. 258, 10 L. R. A. 101, and note, 24 Am. St. Rep. 254; Pitts v. Kerley, 126 La. 221, 52 South. 281.

In the case last above cited, this court said, with regard to the identical conveyance to which we are now referring:

"When Rush D. Pitts purchased from Sam Benjamin and Isaac Barron, as adjudicatees at the tax sale made to them in 1887, all rights which they may have acquired therein, he, for the benefit of himself and his coheirs, lifted the cloud which rested on their title, as heirs, by the adverse claims of those parties." Pitts v. Kerley, 126 La. 237, 52 South. 286.

[3] Defendant's claim therefore rests upon the proposition, not that R. D. Pitts owned more than a third interest in the property, or that he had the right to sell more, but that he appeared upon the public records as the owner of the whole; and

that, as he, so appearing, undertook to convey title to the whole to a third person, whose rights are to be determined solely by such appearance, the title to the whole passed the equities in favor of the nonregistered co-owners notwithstanding.

It is not contended that, as a matter of fact, the defendant was guided by the public records, in so far as the tax title was concerned, or that, at the time it accepted the ratification and relinquishment from R. D. Pitts, it had any knowledge or suspicion that the conveyance to him from Benjamin & Barron existed, or had ever existed. Nevertheless, if the situation were altogether as the proposition that we are considering assumes it to be, we are inclined to think that it would be well founded. There is, however, a defect in the minor premise. R. D. Pitts did not undertake to convey title to the whole property.

The instrument that he executed begins by declaring, in unmistakable terms, the capacity in which he appeared and was acting, thus:

"Personally appeared * * * R. D. Pitts, * * * who declared * * * *that he is one of the three heirs of Stephen D. and Mrs. Ann. Pitts, and, as such* [italics by the court], that he did, by these presents, waive, relinquish and renounce * * * al his right, title and interest," etc.

What right, title, and interest did he thus waive, relinquish, and renounce? The answer is plain. He had just declared that he was "one of the three heirs" of his parents, and that what he was doing he was doing in that capacity. So that the title that he waived, relinquished, and renounced was the title which was vested in him "as such" heir. That was the only title which, without the perpetration of a fraud upon his coheirs, he could alienate or incumber; and that what, from the language used, he appears to have done is exactly what he intended to do is sustained by the presumption that he did not intend to perpetrate a

fraud. Nor do we think that the defendant understood that he was appearing in any other capacity or waiving any other right than that of heir; for assuredly if it had considered that it was dealing with him as one who held a valid title to the whole property it would not have been satisfied to have him appear and act as the heir of an undivided one-third interest. Nor, if defendant had supposed that R. D. Pitts had effectively conveyed, waived, or relinquished the title to the whole property, would it, as we imagine, more than three years later (long after the tax title should have been made safe by the prescription established by the Constitution of 1898), have paid Mrs. Jocelyn $1,500 for a relinquishment of her one-sixth interest.

We are therefore of opinion that the case has been correctly decided, and the judgment appealed from is accordingly affirmed.

LAND, J., recused.